**93 So.2d 228**

**FORCUM–JAMES CO., Inc.**

**v.**

**DUKE TRANSPORTATION CO. et al.**

**No. 42695.**

**Jan. 21, 1957.**

**Rehearing Denied Feb. 25, 1957.**

Roger M. Fritchie, Baton Rouge, for plaintiff-appellant.

Albin P. Lassiter, Monroe, Tooke, Tooke & Gallagher, Shreveport, for appellees.

McCALEB, Justice.

This suit was instituted by Forcum-James Company, Inc., against J. C. Duke, doing business as Duke Transportation Company, and his liability insurer, Fidelity and Casualty Company of New York, to recover the sum of $2,396.90, this being the alleged damage sustained by a temporary bridge constructed by plaintiff on the Alto-Monroe Highway (Louisiana Highway No. 15) across Bayou Lafourche in Richland Parish, Louisiana, when it collapsed under the weight of an overloaded

truck owned by Duke (hereinafter called "defendant").

On May 28, 1953, defendant's employee, one Doyle Flurry, was driving the truck in an easterly direction on Louisiana Highway No. 15. He had in his possession an Overweight Hauling Permit issued to defendant by the Department of Public Safety, Division of State Police, allowing the truck a gross weight of 78,000 pounds for this particular haul which included in the route to be traversed Louisiana Highway No. 15. In attempting to cross a temporary bridge across Bayou Lafourche, Flurry negotiated approximately three-fourths of the length of the trestle when three spans of the bridge collapsed under the truck. Plaintiff repaired the bridge at an alleged cost of $2,396.90.

In its petition, plaintiff avers that it constructed the temporary bridge for the Louisiana Department of Highways pursuant to the terms of a contract designated as State Project No. 26–10–06 and sets forth seven distinct allegations of negligence on the part of Flurry, the driver of the truck. The substance of the charges are that it was imprudent for Flurry to cross the temporary bridge with such an overloaded truck and, further, that his attempt to cross the bridge was executed in a careless manner. In addition to seeking a recovery in tort, plaintiff also contends that defendants are liable ex contractu, reproducing in its petition the following language contained in the Overweight Hauling Permit issued to defendant:

"The applicant (i. e., defendant) assumes responsibility for and obligates himself to pay for any damages caused to highways, roads, bridges, structures or any other state-owned property while using this permit." (Words in parenthesis ours.)

Plaintiff asserts that the contractual liability assumed by defendant in obtaining the permit runs in its favor and alleges that it has been legally and conventionally subrogated to any of the rights, actions, claims, warranties and guarantees belonging to the State of Louisiana and the Department of Highways.

Defendants filed a motion for plaintiff to elect its remedy, either in tort or in contract. The motion was overruled and defendants answered generally denying the allegations of negligence, alternatively pleading that plaintiff was contributorily negligent in not maintaining the bridge in a safe condition for traffic and in not posting warning signs to inform the travelling public of the load limit of the bridge (ten tons).

During the trial on the merits, after plaintiff had rested, defendants filed an exception of no right or cause of action. The judge referred this exception to the merits and, at the conclusion of the evidence, he rendered judgment in favor of defendants,

holding plaintiff to be guilty of contributory negligence on its tort claim and further finding that plaintiff did not sustain a cause of action ex contractu against defendants. Plaintiff has appealed.

At the outset, we direct our attention to defendants' contention that plaintiff has failed to show a right of action. The theory of their exception is that the bridge in question was the property of the State of Louisiana at the time it was damaged and that, therefore, the State of Louisiana alone has a right of action for the cost of repairs, it being further asserted that plaintiff was neither conventionally nor legally subrogated to the State of Louisiana.

We are in accord with defendants' view that the temporary bridge at the time of its collapse was the property of the State of Louisiana. It had been built for the State and accepted by it as part of its highway system and even plaintiff in its brief makes the unequivocal statement that "it is unquestioned that this trestle was the property of the State of Louisiana and part of its highway system".[1]

■ Despite the uncontroverted evidence, the trial judge resolved that the bridge was the property of plaintiff at the time of the accident. This ruling was founded on the judge's analysis of certain provisions of the construction contract between plaintiff and the Department of Highways, particularly one which obliged plaintiff to maintain the bridge in a safe condition for traffic until the new permanent bridge would be in operation and another specifying that, on completion of the new permanent bridge, plaintiff was to remove the temporary bridge and that all materials therein were to remain plaintiff's property.

We find nothing in these contractual provisions to support the judge's conclusion that plaintiff retained ownership of the temporary bridge after it had become a part of the highway system of the State. They simply mean what they say—that plaintiff, pending the completion of the new bridge, was to maintain the temporary structure and was entitled to the salvage therefrom upon its demolition when the new bridge was completed.

Since we find that the bridge belonged to the Department of Highways, it would seem to necessarily follow that plaintiff is without a right of action ex delicto against the defendants as the alleged quasi

---

1. Furthermore, Mr. J. A. Cooper, general bridge superintendent, testified that the State of Louisiana owned the temporary bridge all during the construction of the new permanent bridge which was being built by plaintiff in the nearby vicinity. To the same effect is the evidence of Mr. R. B. Richardson, Director of Louisiana Department of Highways, who stated that the temporary bridge was a part of the State Highway System and that it had been inspected and accepted by the Department.

offense damaged only one piece of property and gave rise to but one right and cause of action in favor of the party sustaining the damage, State of Louisiana through the Department of Highways. However, it is plaintiff's position that, since it was obligated to maintain the bridge and became contractually responsible for the repairs, it has sustained injury as a consequence of defendant's fault and is, therefore, entitled to reimbursement under the comprehensive provisions of Article 2315 of the Civil Code.

■ This postulate cannot be maintained. It is a basic principle of the law that a tort-feasor is responsible only for the direct and proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation. See Foret v. Board of Levee Com'rs of Orleans Levee Dist., 169 La. 427, 125 So. 437, citing, among other authorities, Sutherland on Damages, Vol. I, p. 127. And see also D. R. Carroll & Co. v. New Orleans, J. & G. N. R. Co., 26 La. Ann. 447. This appears to be the general rule, to which the Supreme Court of the

United States has given its stamp of approval. Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 135, 72 L.Ed. 290. In that case, Justice Holmes remarked that " * * * no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. * * * The law does not spread its protection so far."

Even the board language used in Article 2315 of our Code[2] does not justify a departure from the above stated doctrine.[3] Indeed, to permit a person to proceed against a wrongdoer in every instance where such person has sustained damage by reason of his contractual obligation to the injured party would open the door to the prosecution of claims for damages indirectly and remotely connected with the tortious act and encourage a multiplicity of suits from which numerous conflicts of interest might ensue. Parties situated in plaintiff's position can readily protect themselves by obtaining from the injured person a conventional subrogation of the latter's rights and, thus, the tort-feasor can be made to

---

2. "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * * * ".

3. And this, notwithstanding the ruling apparently to the contrary in London, Guarantee & Acc. Ins. Co. v. Vicksburg, S. & P. R. Co., 153 La. 287, 95 So. 771, which was used to buttress the opinions of the Court of Appeal for the Parish of Orleans in Universal Automobile Ins. Co. v. Manisalco, 148 So. 731 and Hansen v. Hickenbotham, 61 So.2d 620 and that of the First Circuit in John M. Walton, Inc., v. McManus, 67 So.2d 130.

respond for the direct and foreseeable consequences of his act in a single suit.

■ We therefore hold that, unless plaintiff has been subrogated to the rights of the Department of Highways, it has no right of action against defendants, either ex delicto or ex contractu. As plaintiff alleges in its petition that it has been legally and conventionally subrogated to the Department's rights, let us examine that phase of its case.

The trial judge resolved that the claim of legal subrogation has no merit and he also refused to admit evidence to support the allegation of conventional subrogation.

■ We think the judge was correct in holding that the mere fact that plaintiff repaired the bridge in conformity with its contractual obligation did not legally subrogate it to the rights of the Department of Highways against the defendants herein. The cases in which legal subrogation take place are set forth in Article 2161 of the Civil Code.[4] Four instances are given, none of which appear to be at all applicable to this case. Since plaintiff simply takes the position that he has been legally subrogated without pointing out any basis for the contention, further discussion of the matter would be inutile.

■ With reference to plaintiff's claim that it has obtained a conventional subrogation from the Department of Highways, it appears from the record that plaintiff attempted to offer in evidence a document purporting to be such an act of subrogation. Defendants objected to its introduction, mainly on the ground that the subrogation is legally ineffective under the specific provisions of Article 2160 of the Civil Code[5] since it was dated February 5, 1954, some eight months after plaintiff had repaired the temporary bridge.

The trial judge sustained defendants' objection and refused to admit the act of subrogation in evidence.

We think that he clearly erred in this regard. The fact that the document is

4. It provides:
"Subrogation takes place of right:
"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.
"2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was ·mortgaged.
"3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.
"4. For the benefit of the beneficiary heir, who has paid with his own funds the debts· of the succession."

5. The article provides, in part, that:
"The subrogation is conventional:
"1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment."

dated some eight months after plaintiff repaired the temporary bridge did not necessarily render the act of subrogation null. But, even if it did, this did not affect the admissibility of the act, as it was essential to receive it in evidence in order to adjudicate as to its validity. In connection with the date upon which the subrogation was executed, it is apt to observe that plaintiff's witness, Cooper, who identified the document, explained that the reason why the subrogation was placed in writing at a date much later than the completion of the repair work was that "The Highway Department agreed to us that they would collect this damage for us * * * they were to collect, and repay us, and they promised to do that".

The requirement of Article 2160 of the Civil Code that the subrogation be expressed and made at the same time as the payment has not been rigidly adhered to by the jurisprudence. In fact, it is now well settled that parol evidence may be admitted to prove an agreement for subrogation. In the leading case of Cooper v. Jennings Refining Co., 118 La. 181, 42 So. 766, it was found that an oral agreement for subrogation, coupled with the mere subsequent sending of a check, was sufficient to sustain a conventional subrogation. Whether the subrogation in this case is valid or not can only be determined from an examination thereof in connection with the surrounding facts and, as we have stated, it was error to refuse its introduction in evidence.

For the foregoing reasons, the judgment appealed from is annulled and set aside and the case is remanded to the district court for further proceedings according to law and consistent with the views herein expressed. The costs of this appeal are to be borne by defendants; taxation of other costs to await final determination of the case.