**SHELL OIL COMPANY**

v.

**S.S. TYNEMOUTH, her engines, etc., and Burnett Steamship Co., Ltd.**

**No. 5152.**

United States District Court
E. D. Louisiana.

June 6, 1962.

Walter Carroll, Jr. (Terriberry, Rault, Carroll, Martinez & Yancey), New Orleans, La., for libellant.

James G. Burke, Jr., (Chaffe, McCall, Phillips, Burke, Toler & Hopkins), New Orleans, La., for respondent.

ELLIS, District Judge.

On November 9, 1960, Shell Oil Company entered into an agreement with The Texas Pipeline Company whereby Texas was to make its terminaling facilities at Pilottown, Louisiana, available to Shell for a period of five years commencing not later than July 1, 1961. The agreement provided that Shell would move a daily average of 25,000 barrels of crude petroleum through these facilities and pay 3¢ per barrel terminaling and load charge as provided in Texas' Interstate Commerce Commission Tariff Number 582. It was understood by both parties that the Texas facilities would be those of a *common carrier* and subject to ICC regulations. Texas was to provide additional storage tanks, mooring piling clusters, additional pumping equipment, a deeper berth for tankers, breasting lines, and was to make numerous repairs. Texas was to provide personnel and facilities for securing ships in berth.

On or before the 20th of each month Shell was to advise Texas of the quantities of petroleum it elected to deliver and load during the following month, delivery schedules and tanker loading dates. Shell did not have exclusive use of the terminal facilities. An amendment (dated July 3, 1961) to the original contract provided that additional shore ballast facilities, if necessary, were to be installed at Shell's option and expense, and such ballast facilities had to be removed at the termination of the agreement. At the time of the incident in suit, no such facilities had been added by Shell.

On March 8, 1961, apparently the day before Shell was to make its first shipment of oil through the terminaling facilities, the S/S TYNEMOUTH, a British Flag Steamship, owned by the defendant, collided with the Texas dock. As a result Shell was unable to use the terminaling facilities and necessarily had to find other accommodations.

■ Shell brings a libel *in rem* against the S/S TYNEMOUTH and *in personam* against the Burnett Steamship Company, Limited, for Shell's out-of-pocket expenses of terminaling its oil elsewhere.[1] This section does not create a new right but makes available a new remedy for a pre-existing cause of action, United States v. Matson Navigation Company, 9 Cir., 201 F.2d 610, 617; All-America Cables &

Radio v. S/S Dieppe, 93 F.Supp. 923, and directs the district courts to exercise admiralty and maritime jurisdiction of the United States already conferred by Article 3, Section 2 of the Constitution and as authorized by the Judiciary Acts.[2]

Based on the pleadings and the formal agreement in the record, defendant moves for summary judgment under Rule 56[3] on the theory that a negligent tortfeasor is beyond the reach of a party contracting with the injured party. The pleadings do not indicate that there is a genuine issue of material fact, and therefore a summary judgment would be appropriate.[4]

Libellant merely alleges that it has a cause of action against such a tortfeasor for its damages.

■ This being the case, the issue resolved itself into a question of law; and the law, maritime and civil, state and federal, is uniform in holding that a tort to the person or property of one party does not render the tortfeasor (vessel) liable to another (Shell) merely because the aggrieved party (Shell) was under a contract with another unknown to the wrongdoer. Robins Dry Dock & Repair Company v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927); Foret v. Board of Levee Commissioners of Orleans Levee District, 169 La. 427, 125 So. 437 (1929).[5]

1. 46 U.S.C.A. § 740 "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

"In any such case suit may be brought *in rem* or *in personam* according to the principles of law and rules of practice obtaining in cases where the injury or damage has been done and consummated on navigable water * * *."

2. 28 U.S.C. § 1333. "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. * * *"

3. 28 U.S.C. rule 56.

4. Star Apartment, Inc. v. Martin, 5 Cir., 204 F.2d 829.

5. Also see Forcum-James Co., Inc., v. Duke Transportation Company, et al., 231 La. 953, 93 So.2d 228, wherein the Louisiana Supreme Court adopted the Robin Rule and approved the Foret Rule, Supra: " * * * it is plaintiff's position that, since it was obligated to maintain the bridge and became contractually responsible for the repairs, it has sustained injury as a consequence of defendant's fault and is, therefore, entitled to reimbursement under the comprehensive provisions of Article 2315 of the Civil Code. This postulate cannot be maintained. It is a basic principle of law that a tort-feasor is responsible only for the direct and

, Libellant alleges a right of recovery because of its status as a lessee and cites numerous cases in support thereof,[6] and Article 2703 [7] of the Louisiana Civil Code. Conceding, *per arguendo*, that libellant is a lessee, all cited cases involve litigation between landlord and tenant and all precede the rule set forth in the Robin and Foret cases, as adopted and approved in the Forcum-James case, 231 La. 953, 93 So.2d 228.

Libellant directs the court's attention to Briggs v. Aiken, supra, which presents a problem close to the one at hand, however, this case does not stand for the proposition that libellant is entitled to a successful action under Article 2703, as will be seen below.

In that case the second floor of a building at No. 1102 St. Charles Avenue, New Orleans, Louisiana, was subleased to the plaintiff. Construction of a service station on adjacent premises necessitated removing and rebuilding a common wall. A general contractor sub-contracted the shoring of the wall.

After the work was begun the second floor wall collapsed on plaintiff inflicting bodily injuries and damaging her personal belongings. Suit was filed against both landowners, lessee and general and sub-contractors. The Court found, as a matter of fact, that the walls were not in a defective or dangerous condition and that the accident was caused by improper shoring of the upper walls.

A pertinent portion of that opinion holding sub-contractor responsible and the grounds under which the action was to be brought is as follows:

"At the outset, in the consideration of this case, it is of dominant importance for a correct conclusion as to the law governing this litigation, to determine whether the action is one purely *ex delicto* arising under Articles 2315 and 2316 of the Civil Code, or whether it be an action *ex contractu* as well as *ex delicto* arising from the contractual obligations found in the leases or other contracts existing between the parties involved in these proceedings. * * *"

The Court cited Reynolds v. Egan, supra, and Article 2703 only in passing and neither the case nor the Article provided the substantive law upon which the decision was grounded. After an elaborate discussion of Articles 670,[8] 2315,[9] 2316 [10] and 2322,[11] of the Code the court came to the conclusion that "This suit, in its last

proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action *ex delicto*, in the absence of subrogation. * * *" 93 So.2d 228, 230."

6. Gulf Coal & Coke Company v. Bingaman, 6 La.App. 107 (1927), (landlord relieved of liability for lessee's property tortiously removed from the premises by unidentified third persons); Reynolds v. Egan, 123 La. 294, 48 So. 940 (1909), (landlord held not responsible for tortious disturbances of possession by a third person); Briggs v. Aiken, Orl. No. 9261 (1924).

7. LSA-C.C. Art. 2703 "The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the persons occasioning such disturbance."

8. LSA-Civil Code, Article 670 "Everyone is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers (passersby), under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

9. LSA-Civil Code, Article 2315 "Every act whatever of a man that causes damage to another obliges him by whose fault it happened to repair it."

10. LSA-Civil Code, Article 2316 "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

11. LSA-Civil Code, Article 2322 "The owner of a building is answerable for the

analysis, is but an action *ex delicto* based on Articles 2315 and 2316 of the Code. * * *"

The gist of the holding is that Article 2703 is merely directive and a reference to a cause of action already granted by Articles 2315 and 2316 and that reference to the general tort law of Louisiana, as evidenced from the Forcum-James litigation, is not at all in the furtherance of libellant's claim.

The plaintiff in Briggs received an award of $7,500.00 for bodily injuries and damages to her personal property. Nowhere in the opinion was a claim made for loss of use or interference with her contract rights, and our attention has not been directed to such a case. Nor could research find one.[12]

It is quite difficult to place Shell in a position with greater rights than the charterer in Robin, the employee in Foret, or the bridge maintenance contractor in Forcum-James.

In two of these cases the plaintiffs had a proprietary interest far greater than that available to Shell and still recovery was denied. Even in the New York Trap Rock case, supra, which is quite strong for libellant, an organization with a possessory right and proprietary interest far superior to libellant's was given a well qualified interlocutory award of damages, *if any*.

A similar situation to the instant case arose in Louisville and Nashville Railroad Company v. Arrow Transportation Company and The Tug Arrow, et al.[13] In that case the L & N had a trackage agreement with the Southern Railway Company for the use of its drawbridge over the Tennessee River. The M/V Arrow, with eleven barges in tow, struck the bridge. L & N then had to reroute its trains from Nashville, Tennessee, and Montgomery, Alabama, via Atlanta, Georgia. L & N libeled The Arrow and its owners to recover $6,471.25 for loss of use and the expenses in re-routing its trains. The Court, relying on the Robin Rule, gave a judgment for defendant. *"Mere negligence* in interfering with another's contract rights will not sustain a cause of action for damages. * * *"[14]

After a careful consideration of the matter the Court is of the opinion that under the authorities referred to, libellant has no cause of action in admiralty or at civil law enforceable in admiralty, and defendant's motion for summary judgment be and it is hereby granted and the libel dismissed.

---

damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

12. See Petition of New York Trap Rock Corporation as owner of the Scow W. Lambert, 172 F.Supp. 638, in a cause of exoneration from or limitation of liability. Petitioner moored its Scow (without authority) to the Navy Finger Pier in Newark, New Jersey. She careened, struck the pier, caused damage thereto and sank. One claimant was the Lipsett Steel Products Company, Inc., (Sublessee, having subleased part of the Pier from the Port Authority, the United States being owner and lessor) seeking damages for loss of use of the Pier.

The Court neither granted nor denied the award and held: "6. Subject to the foregoing limitation of liability, Lipsett is entitled to an interlocutory decree against Trap Rock for damages, *if any*, for loss of use sustained. * * *" 172 F.Supp. 638, 648 (Emphasis added) No appeal has been lodged from this judgment and the final disposition of the limitation proceeding and Lipsett's right to damages, *if any*, and if awarded, is indeterminate.

13. D.C., 170 F.Supp. 597.

14. Louisville and Nashville Railroad Company v. The Arrow Transportation Company and the Tug Arrow, supra, at Page 600.