355 So.2d 591 (1978)
Ruby Thaxton Rond, wife of/and Samuel ROND and Samuel Rond, Individually and for and on behalf of his minor daughter, Shawn Rond and Tina Johnson
v.
William H. SIMS, Sr., Warehouse Corporation of American and Security Insurance Group.
No. 8555.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1978.
Rehearing Denied March 14, 1978.
Writ Refused May 5, 1978.
*592 Darleen M. Jacobs, New Orleans, for plaintiffs-appellees.
Rudolph R. Schoemann, New Orleans, for defendants-appellants.
Before LEMMON, GULOTTA and BOUTALL, JJ.
BOUTALL, Judge.
Plaintiffs, Ruby Thaxton Rond and her husband Samuel Rond, were awarded judgment for personal injuries to Mrs. Rond and for property and other special damages arising out of an automobile-truck collision against the truck driver, William H. Sims, Sr., his employer, Warehouse Corporation of American, and their insurer, Security Insurance Group. The defendants have appealed and Mrs. Rond has answered their appeal seeking an increase in quantum.
Sims was driving his employer's large truck, heavily loaded with cotton bales, on Elysian Fields Avenue, New Orleans, attempting to make a "U" turn. During this maneuver he collided with the automobile driven by Mrs. Rond, dragging it along for a short distance and pushing it up onto the neutral ground at the intersection. Sims testified that he did not see the Rond vehicle and that he was attempting his turn from the middle lane of the lake-bound roadway of Elysian Fields because he needed plenty of room in which to turn this large tractor-trailer combination. His testimony alone convinces us of his negligence. A left turning motorist is held to a high degree of care in executing his maneuver, and when he makes a left turn from a lane other than the normal left turn lane in front of a vehicle in the left lane, without making sure that lane is clear, his negligence is so apparent as not to require a discussion.
It is contended however that Mrs. Rond was also negligent. Mrs. Rond was also proceeding on Elysian Fields with the purpose of making a "U" turn at that same intersection. She was in her proper lane, the left hand lane, and there is no evidence that she was speeding or disregarding any traffic rules. Instead, it is contended that she is somehow negligent because her testimony does not coincide with the testimony of Sims, but conflicts in some ways, particularly as to how each arrived at the intersection. It is obvious that the trial judge resolved these conflicts in favor of Mrs. Rond and disbelieved at least those conflicting portions of Sims' testimony. We agree with this determination. The testimony of Mrs. Rond corresponds to the physical facts of the accident, and except for some conflict with Sims, there is no apparent reason to disbelieve her. Defendants contend that, because she did not produce as witnesses two 12-year old children who were passengers in her car, and who at the time of trial lived in Florien, Louisiana, 236 miles away, *593 she should be assessed with the presumption that these witnesses would testify adversely to her cause. There is nothing in the record to indicate that these children would possess some peculiar knowledge not possessed by any of the other witnesses, and there is not even a suggestion that they actually observed the initial facts of the accident. We find no basis upon which to impose such a presumption.
The trial court awarded Mrs. Rond $12,000.00 general damages for her injuries, and the propriety of this award is questioned by appellants as being too high and by Mrs. Rond as being too low. The accident happened on July 25, 1974, and on the next day Mrs. Rond went to the emergency room of the St. Bernard Medical Center because of the severe pain she suffered generally in her back and neck area. She was treated with drugs and diathermy, and not obtaining relief from her symptoms, she placed herself under the care of Dr. Lucas DiLeo on August 6, 1974. He noted that she was suffering pain throughout the lumbar and cervical spine areas and occipital headaches. He determined that she had bilateral muscle spasm in the cervical area and in the lumbosacral area, which he classified as moderate on the right and moderate to severe on the left. Dr. DiLeo saw her weekly, gave her injections of Decadron and muscle relaxants, and referred her for physical therapy treatments. Despite his treatment she was not improving, and he referred her to Dr. Kenneth Vogel, a neurosurgeon, on October 1, 1974. Dr. Vogel confirmed that she did indeed have severe problems in the cervical and lumbosacral areas. Dr. DiLeo continued to treat her in consultation with Dr. Vogel, through November 15, 1974, at which time Mrs. Rond's husband was transferred to Florien, Louisiana, and she accompanied him.
She continued to receive treatment for her ailments in Florien, but they were unsuccessful, and Mrs. Rond came to the New Orleans area to receive treatment from Dr. John E. Lindner, who hospitalized her at Montelepre Hospital in July, 1975. Dr. Vogel was called in for consultation again at that time and a myelogram was done on her lower back. Despite a negative myelogram she continued to exhibit objective symptoms and the doctors concluded that she should undergo a cervical discogram to assist diagnosing the problem. However, Mrs. Rond refused that due to the pain and was subsequently discharged from the hospital. Nevertheless, the doctors concluded that Mrs. Rond still had severe problems and would continue to have them for some time undetermined.
The trial judge awarded $12,000.00 for Mrs. Rond's injuries, pain and suffering and we cannot say that the award is excessive or inadequate. The trial judge is vested with much discretion in making an award of this type, and the degree of pain and suffering, together with the exhibition of objective symptoms, forms a basis for the award which we do not feel we should disturb.
The last issues in this case involve the award of special damages to Mr. Rond. Mr. Rond was paid the sum of $2,363.13 for property damage to his automobile by his own insurance company, Hartford Insurance Company. His judgment included this sum. It is defendant's contention that since Rond subrogated his property claim to the Hartford Insurance Company he could not bring this suit for those damages and stand in judgment.
Ordinarily, a subrogor has no right of action for the right or that portion of the right which has been subrogated away, Code of Civil Procedure, Article 697, the subrogee being the only one who could sue for the subrogated right. Smith v. Foucha, 172 So.2d 318 (La.App. 4th Cir. 1965). But our case goes beyond this. After the subrogation, Hartford had assigned the subrogation claim back to Rond, and Rond testified that he was bringing this suit for the subrogated amount on behalf of Hartford as assignor. This was substantiated by an agent of Hartford.
An assignment is a valid transfer of rights, L.R.S. 9:3051, L.C.C. Article 2642, and may be done orally, Dale, Inc. v. Killilea, *594 94 So.2d 146 (Orl.La.App.1957); L.R.S. 9:3101. Such a transfer of the subrogated right back to Rond would enable him to recover as he is then the owner of the cause or right of action. Forcum-James Company, Inc. v. Duke Transportation Company, 231 La. 953, 93 So.2d 228 (1957). An oral assignment must be proved like any other fact, and the positive testimony of both Rond and the Hartford agent that this assignment was in fact made is not contradicted. As the trial judge awarded the full amount of property damages to Rond, he must have taken the assignment as proven. We find no error in this determination.
Finally, defendants complain of the award of two gasoline purchases, one-night motel expenses, and $122.00 in hospital charges which they conclude were unnecessary to Mrs. Rond's treatment. These charges are occasioned as a result of the Fourth of July occurring during Mrs. Rond's stay in the hospital at New Orleans during July, 1975, when she lived in Florien. We think the charges to be proper, and affirm.
For the reasons assigned above, the judgment appealed from is affirmed at appellant's cost.
AFFIRMED.
LEMMON, Judge, dissents in part and assigns reasons.
I disagree that Mr. Rond can recover the amount of property damage he was paid by his collision insurer.
The collision insurer's claims supervisor testified that she authorized Rond to sue for the amount of property damage to which the insurer was subrogated (p. 64), but did not state the date the agency was authorized.[1] Rond's attorney, while examining him on this point (p. 204), indicated that she had relayed this authorization to him. And a letter from the collision insurer to Rond's attorney (Exhibit D-8) indicates this authorization occurred on June 9, 1976, over a year after the July 25, 1974 accident and also well after the April 2, 1975 petition claiming the entire amount of property damage.[2]
Rond has no cause of action to recover this item. Defendant insurer's representative testified that it belonged to the same arbitration group as Rond's collision insurer and that the companies in that group had contracted to submit to arbitration all automobile property damage subrogation claims of less than $2,500.00. The collision insurer did not deny this testimony. Since Rond's rights under the belated agency authorization (if valid) are subject to defenses applicable to the collision insurer, the exception of no cause of action should be maintained.[3]
NOTES
[1] This was an agency, not an assignment. Rond testified that he did not purchase the insurer's rights, but that the insurer authorized him to sue for its claim.
[2] The collision insurer paid Rond for the property damage in August and November, 1974.
[3] Rond did not allege any agency to sue for the insurer's subrogation payment, and defendant filed exceptions of no cause of action, no right of action, and failure to include an indispensable party-plaintiff. Subsequently, another exception of no right of action was filed, superficially alleging Rond had no right to sue for this item. The record contains no judgment on the exceptions.

Therefore, when Rond filed this suit, he had no right of action for the subrogated property damage and was not then authorized to assert the collision insurer's right. By belatedly authorizing Rond, the collision insurer obviously tried to avoid the effect of prescription and did not allow defendant insurer an opportunity to assert that exception, which specifically is not before us. However, the exception of no right of action should, in my opinion, also be maintained under these circumstances, or at the very least this part of the claim should be remanded to allow defendant insurer to assert prescription against the real party at interest.