**CARGILL, INCORPORATED,**
**Plaintiff-Appellant,**

v.

**OFFSHORE LOGISTICS, INC.,**
**Defendant-Appellee.**

No. 79–3245
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

April 7, 1980.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Randall C. Songy, Lafayette, La., for plaintiff-appellant.

\* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Phelps, Dunbar, Marks, Claverie & Sims, Howard Daigle, Jr., New Orleans, La., for defendant-appellee.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

GARZA, Circuit Judge:

In this diversity case we are asked by the Appellant, Cargill, Inc., to rule contrary to the state law of Louisiana as previously followed by this court. This we decline to do and affirm the court below.

On November 19, 1977, a helicopter owned and operated by the Defendant and Appellee here, Offshore Logistics, Inc., struck and severed a power line owned by Central Louisiana Electric Company, Inc., hereinafter called CLECO. Appellant Cargill, Inc. alleges that as a result of this incident CLECO was unable to supply electrical power to its salt mine in Belle Isle, Louisiana, thus forcing Plaintiff to suffer its alleged damages. The power was off for a period of three days and Cargill alleges that it lost production revenues and had to pay contractual penalties to customers whom they could not supply what they had contracted to do.

The court below granted the Defendant Appellees' motion for summary judgment which had been filed claiming that the complaint failed to state a cause of action under the substantive law of Louisiana.

CLECO did not have the necessary facilities to service the electrical needs of Cargill at its salt mine and on March 19, 1962, Plaintiff Appellant Cargill and CLECO entered into an agreement for electric service to the Plaintiff Appellants' salt mine under which CLECO would furnish Cargill all of its electrical power needs. The parties agreed that the cost of building this thirteen mile transmission line and power stations would cost no less than $250,000.00 and attached a Rider to the usual form of electrical power contract under which Cargill agreed to pay a facilities charge to

CLECO of $2,000 per month during the ten year period of the contract. Cargill agreed to pay so much for each kilowatt hour of power used plus $2,000.00 a month. Under the Rider CLECO agreed to rebate so much for power used by Cargill and any other customer receiving power from this transmission line and facilities but the rebate could never exceed the amount of the facilities charge of $2,000 per month. The contract was to terminate in October of 1972. At the time of the severance of the transmission line Sun Oil Company was also receiving power from CLECO to operate its gas processing plant located on Belle Isle.

The contract between CLECO and Cargill contemplated that Cargill would pay the facilities charge provided for in the Rider whether they bought power or not from CLECO. CLECO reserved the right to remove its poles, lines and power station facilities from the property of Cargill at the termination of the agreement.

The negligence of the Appellee Offshore Logistics, Inc. resulted in damage to the physical property of CLECO and they were the only ones that could receive damages for such negligence since they were the owners of the physical property damaged. It seems to be clear that under the substantive law of Louisiana there can be no recovery for alleged damages resulting from negligent interference with contractual relations or business expectation.

In *Hamilton v. Canal Barge Company, Inc.*, 395 F.Supp. 978 (D.C.La.), Judge Rubin, now of this court, in a case in which a fiancee was trying to recover damages for the negligent demise of her fiancee crewman because that negligence had caused her fiance to breach his contract of marriage, held that both under Louisiana and admiralty law there was no cause of action for interference with contractual relations.

In *Kaiser Aluminum & Chemical Corp. v. Marshland Dredging Co.*, 455 F.2d 957 (5th Cir. 1972), this court held in circumstances which are indistinguishable from the instant case that there could be no cause of action for negligent interference with contractual relations. A recital of the facts in

*Kaiser Aluminum* will show that under similar circumstances to those before us this court has denied damages. In that case the crew of a dredging company's boat dropped a heavy anchor which punctured a high pressure pipeline supplying gas to Kaiser Aluminum's chemical refinery. Due to the interruption of the gas supply Kaiser was forced to incur shut down expenses and production losses which they alleged amounted to $170,299.00. Since Kaiser Aluminum did not own the damaged pipeline, they were denied consequential damages because of the damage to the pipeline.

In *Kaiser Aluminum*, this court relied on *Robins Dry Dock & Repair Company v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). In that case the Supreme Court held that as a general rule a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. These are the same facts before us.

Our decision in *Kaiser Aluminum, supra,* was recently affirmed again by this court in *Dick Meyers Towing Service, Inc. v. United States*, 577 F.2d 1023, 1025 (5th Cir. 1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), where we stated that "the law has traditionally been reluctant to recognize claims based solely on harm to the interest in contractual relations or business expectancy."

Louisiana courts have also consistently held that there can be no recovery when presented with facts similar to those now before the court. A leading Louisiana case on this issue is *Forcum-James Company, Inc. v. Duke Transportation Company*, 231 La. 953, 93 So.2d 228 (1957). In that case the Plaintiff had a contract with the state to rebuild a bridge and to erect and maintain a temporary one during construction. The Defendant's employees damaged the temporary bridge while using it with an overloaded truck. Because of its contractual obligations with the state the Plaintiff in that case was required to repair the temporary bridge and subsequently sued the De-

fendant for the cost of these repairs. The trial court dismissed the suit after trial on the merits. The Supreme Court of Louisiana affirmed the trial court's holding as to the applicable rule of law but remanded the case for further evidence on the question of an alleged conventional subrogation. The Supreme Court of Louisiana in *Forcum-James* stated, "it is a basic principle of the law that a tort-feasor is responsible only for the direct and proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action *ex delicto*, in the absence of subrogation." 93 So.2d at 230.

In the recent case of *Desormeaux v. Central Industries, Inc.*, 333 So.2d 431 (La.App. 3rd Cir.), *writ denied*, 337 So.2d 225 (La. 1976), the Supreme Court of Louisiana adhered to the rule of law expressed in *Forcum-James, supra* and held that a plaintiff could not recover for alleged losses resulting from the defendant's negligent interference with the plaintiff's contractual relation. In that case the plaintiff Desormeaux sought damages for losses to part of his farm crop due to the interruption of his irrigation water supply. He had made arrangements with his father who owned the irrigation system and had contracted with him to supply him the needed water. The defendant had negligently ruptured a culvert of the irrigation system which interrupted the supply of water. The court in that case found that the plaintiff's only damages arose out of his contractual relationship with his father, the owner of the damaged irrigation system, and that the father was the only true injured party; that Desormeaux could not recover damages resulting solely from interference with the contractual relations he had with his father. The plaintiffs sought review by the Louisiana Supreme Court urging that they should upset the rule of law established in *Forcum-James, supra*. The Louisiana Supreme Court refused the writ although two justices dissented from the writ denial and Justice Albert Tate, now of our court, stated, "although the issue is correctly decided

under existing jurisprudence, this court should re-examine *Forcum-James Company, Inc. v. Duke Transportation Company*, 231 La. 953, 93 So.2d 228 (1957) insofar as applicable to situations such as is here presented."

It is up to the Supreme Court of Louisiana and not this court to change the substantive law of that state.

The Appellant in this case cites us to many scholarly criticisms of the rule, but we are bound by the former decisions of this court.

Appellant argues to us that under the contract that they had with CLECO they had a vested interest in the transmission line severed. The fact remains that the transmission line severed was the property of CLECO. Similar claims of vested interest have been made in the cases cited herein and to no avail. We too must refuse to accept the vested interest claim of the Appellant here.

AFFIRMED.