488 So.2d 148 (1986)
FLORIDA POWER & LIGHT Company, Appellant,
v.
Orlando Fleitas, Jr., Appellee.
No. 85-607.
District Court of Appeal of Florida, Third District.
May 13, 1986.
*149 Steel, Hector & Davis and Donald M. Middlebrooks, for appellant.
Whitman, Wolfe, Gross & Schaffel and Manuel M. Rodriguez-Fiol, for appellee.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.
HUBBART, Judge.
This is an appeal by the defendant Florida Power and Light Co. [FP & L] from a final judgment entered upon an adverse jury verdict in an action allegedly sounding in negligence. The central issue presented for review is whether a negligence action cognizable under Florida law was pled or proven below. For the reasons which follow, we conclude that no such action was established by pleading or proofs herein and reverse.

I
The relevant facts in this appeal are as follows. The defendant FP & L operates a nuclear power installation, located in southern Dade County, Florida, known as Turkey Point Power Plant. Quite understandably, FP & L has a policy against anyone using drugs or alcohol while on the premises of this sensitive installation. As a security precaution, FP & L requires outside contractors, who have agreements with FP & L, to supply documentation on any of the contractors' employees assigned to work at the Turkey Point Power Plant. Upon receiving appropriate documentation, FP & L issues the contractor's employee a badge which permits unescorted access to the plant. FP & L claims an unrestricted right to revoke this access badge at any time.
In October 1982, the plaintiff Orlando Fleitas, Jr. [Fleitas] was hired as a decontamination technician ["deconner"] by the Institute of Resource and Management, Inc. [IRM]. IRM, in turn, assigned the plaintiff Fleitas to work at FP & L's Turkey Point Power Plant, pursuant to an on-going contract which IRM had with FP & L to clean and decontaminate the said plant. IRM supplied necessary documentation to FP & L regarding the plaintiff Fleitas and certified that Fleitas' background had been verified. As a result, FP & L issued Fleitas an unescorted access badge to the Turkey Point Power Plant, and Fleitas commenced work at the plant as a "deconner." He worked in that capacity without incident twelve hours a day, seven days a week for approximately six months.
In March 1983, however, FP & L management received a tip from one of its employees who worked with the plaintiff Fleitas that the latter was using drugs while on the premises at the Turkey Point Power Plant. FP & L immediately revoked Fleitas' unescorted access badge to the plant pending further investigation. Thereafter, an investigation was conducted in which FP & L management determined that the drug accusation against Fleitas was well founded, and, accordingly, the revocation of Fleitas' access badge was made final. IRM then dismissed the plaintiff Fleitas from his job. It is the nature of FP & L's investigation, which (a) led to the revocation of Fleitas' access badge to the Turkey Point Power Plant, and (b) caused the disruption of Fleitas' employment with IRM, that forms the basis of this lawsuit.
On May 25, 1983, the plaintiff Fleitas filed a two-count complaint against the defendant FP & L and the co-defendant IRM in the Circuit Court for the Eleventh Judicial Circuit of Florida. Count I of the complaint charged FP & L with defamation of character; count II of the complaint charged IRM with wrongful discharge *150 from employment. On April 17, 1984, the trial court granted FP & L's motion for summary judgment on the defamation count, but gave Fleitas leave to amend in order to plead a negligence cause of action against FP & L. Fleitas took no appeal from this order, and on April 20, 1984, filed an amended complaint in which he changed count I of the complaint to charge FP & L with negligence and realleged in count II the charge of wrongful discharge against the co-defendant IRM. This pleading is the operative complaint in the case.
Count I of the amended complaint alleged that the defendant FP & L denied the plaintiff Fleitas access to the Turkey Point Power Plant "as a result of allegations against him that he was dealing in and/or using ... drugs on the premises of the said nuclear power plant." It was alleged that "the said [drug] accusations have been placed on the personal records of the said [p]laintiff causing him irreparable damage, causing him to lose his employment and ... to be unemployable in his chosen profession." No claim was made, however, that these accusations were defamatory in any sense; indeed, Fleitas' defamation action relating to said accusations had already resulted in a summary judgment for FP & L. Instead, Fleitas pled that "in refusing [p]laintiff access to the said premises as a result of the said allegations," FP & L "did so without proper investigation ... and relied upon uncorroborated accusations by an unknown informant and/or an informant that cannot be located." Fleitas then alleged the following acts of negligence by FP & L: (1) "[t]he [d]efendant negligently, carelessly, recklessly, willfully and wantonly ... refused the [p]laintiff access to the nuclear power plant as a skilled technician [based] on the uncorroborated allegations ... [of plaintiff's illegal drug use and activity while] on the premises of the said [d]efendant," (2) the "[d]efendant, upon receiving the [above] allegations ... should have confronted the [p]laintiff with the said allegations to either admit or deny same or to defend himself against the said allegations," but "failed to do so." Finally, the amended complaint alleged that by accepting these uncorroborated accusations and by denying Fleitas access to the said power plant, FP & L "effectively terminated ... [Fleitas'] employment without giving the said [p]laintiff an opportunity to defend himself against the said allegations" and "[t]hat in so notifying the employer of the [p]laintiff of the said allegations without corroboration and/or proof, the [d]efendant constructively terminated the employment of the [p]laintiff and damaged his reputation." Damages in the form of loss of earnings, both past and future, were claimed as a result of this employment termination; other damages were also pled. A motion to dismiss this count of the amended complaint, for failure to state a cause of action, was denied by the trial court.
On February 4-5, 1985, the cause was tried below by a jury in which both FP & L and IRM were before the court as defendants. The evidence admitted at trial, viewed in a light most favorable to the plaintiff Fleitas, tended to establish the factual allegations of the amended complaint against FP & L.[1] The trial court also limited the plaintiff's damages to loss of past and future earnings as a result of the plaintiff's employment termination. At the conclusion of all the evidence, the trial court directed a verdict in favor of IRM on count II of the amended complaint on the basis of the employment-at-will doctrine, *151 but declined to direct a similar verdict for FP & L, as requested by FP & L in its trial and post-trial motions.
At the conclusion of all the evidence, the trial court instructed the jury to determine "whether the [d]efendant, Florida Power & Light Company, was negligent in excluding the [p]laintiff, Orlando Fleitas, Jr., from its plant, and whether such negligence was a legal cause of damage sustained by the [p]laintiff, Orlando Fleitas, Jr." The jury was also given a special verdict form in which the following question was posed: "Did Florida Power and Light Company act reasonably in barring [p]laintiff, Orlando Fleitas, Jr., from the Turkey Point Plant." The jury answered "no" to this question, and awarded the plaintiff Fleitas $10,000 in lost wages for the period prior to June 1983, and $3,000 for lost wages after this date, for a total of $13,000 in damages. A final judgment in the amount of $13,000 was entered below in favor of the plaintiff Fleitas. The defendant FP & L appeals.

II
The central point raised by FP & L on appeal is that the plaintiff Fleitas' complaint failed to state, and his proofs at trial failed to establish, a cause of action against FP & L. It is therefore urged that the trial court erred in denying FP & L's pre-trial motion to dismiss the amended complaint and its trial and post-trial motions for directed verdict. We entirely agree for two reasons, either one of which standing alone calls for a reversal in this case.

A
First, the plaintiff's action against FP & L was nothing more than a claim for negligent interference with a contractual or advantageous business relationship with his employer IRM  a non-existent cause of action in Florida. Count I of the amended complaint, as pled and proven at trial, claims that the plaintiff Fleitas was dismissed from his job, resulting in certain lost earnings, because of FP & L's negligent conduct in (a) investigating the illegal drug complaint against him, (b) barring the plaintiff from FP & L's Turkey Point Power Plant based on the findings of this negligent investigation, and (c) subsequently advising IRM of these negligently arrived at findings. The gravamen of the claim is that the plaintiff Fleitas was fired by his employer IRM as a result of FP & L's negligent conduct. No claim is made that FP & L intentionally interfered with the plaintiff's employment relationship with IRM or that FP & L was guilty of defamation of character against the plaintiff in the subject investigation. The only claim is that FP & L negligently investigated the drug accusation complaint against the plaintiff Fleitas, barred Fleitas from Turkey Point based on its negligent findings, conveyed these findings to his employer IRM, and thereby caused, albeit unintentionally, Fleitas to lose his job with IRM. This is not a cognizable cause of action in Florida or anywhere else in the country.
The law in Florida is clear that "[t]here is no such thing as a cause of action for interference [with a contractual or advantageous business relationship] which is only negligently or consequentially effected." Ethyl Corp. v. Balter, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980), pet. for review denied, 392 So.2d 1371 (Fla.), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). The authorities and case law throughout the country are in substantial accord with this well-established principle of law. "One is not liable to [the plaintiff] for pecuniary harm not deriving from physical harm to the [plaintiff] if that harm results from the [defendant's] negligently causing a third person not to perform a contract with the [plaintiff]...." Restatement (Second) of Torts § 766C (1979). "Liability for interference with contracts and prospective contractual relations developed in the field of intentional torts ... [and] there is as yet no general recognition of liability for negligent interference with an existing contract or with a prospective contractual relation... ." Restatement (Second) of Torts § 766C, comment a (1979) (emphasis added). See Robins Dry Dock & Repair Co. v. *152 Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927); Cargill, Inc. v. Offshore Logistics, 615 F.2d 212, 213 (5th Cir.1980); Dick Meyers Towing Service v. United States, 577 F.2d 1023, 1025 (5th Cir.1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); Louisiana ex rel. Guste v. M/V Testbank, 524 F. Supp. 1170, 1171-72 (E.D.La. 1981), aff'd, 728 F.2d 748 (5th Cir.1984), aff'd on rehearing, 752 F.2d 1019 (5th Cir.1985); Wadsworth v. Nalco Chemical Co., 523 F. Supp. 997, 999 (N.D. Ala. 1981), aff'd, 679 F.2d 251 (11th Cir.1982); General Foods Corp. v. United States, 448 F. Supp. 111 (D.Md. 1978); W. Keeton, Prosser and Keeton on The Law of Torts § 129, at 982, 997 et seq. (5th ed. 1984); Harper & James, The Law of Torts § 6.10, at 501 (1956).
Intentional interference with a contractual employment relationship  even one, as here, which is terminable at will  is actionable in Florida. Unistar Corp. v. Child, 415 So.2d 733, 735 (Fla. 3d DCA 1982) (en banc); see 32 Fla.Jur.2d Interference § 6 and cases collected (1981). Negligent interference, however, with the same contractual relationship, as was pled below, is plainly not actionable in Florida or anywhere else in the country. The trial court erred, then, in denying FP & L's motion to dismiss the amended complaint herein and in denying FP & L's motion for directed verdict made at trial and renewed post trial. No cognizable cause of action was pled or proven below against the defendant FP & L.

B
Second, FP & L had a privilege, in any event, to bar the plaintiff Fleitas from the premises of its nuclear power plant, as it was based on a founded suspicion of illegal drug use; this privilege, in our view, bars any suit by the plaintiff herein, regardless of the theory of tort liability relied on. FP & L received presumptively reliable information from one of its employees, who worked with the plaintiff Fleitas, that Fleitas was using illegal drugs while on the premises of FP & L's sensitive nuclear power plant at Turkey Point. This accusation, whether verified or not, was plainly sufficient for FP & L to revoke Fleitas' unescorted access badge and to deny Fleitas access to the said plant.
We think the very nature of a nuclear power plant, with its enormous potential for death and destruction if improperly maintained, requires, indeed mandates, that FP & L maintain the strictest security and safety measures. In that respect, illegal drug use by anyone on the premises cannot be tolerated, as the lives of countless people become endangered when intoxicated people are allowed to operate such a plant. In carrying out this vitally important public responsibility, FP & L must be given the widest possible authority to bar anyone from its nuclear power plant whenever, as here, a founded suspicion of illegal drug use by anyone on the premises is presented to it. Although we need not go so far as to hold that FP & L may arbitrarily exclude anyone from its nuclear power plant at its whim and caprice, FP & L plainly acted responsibly in this case and is not answerable to the plaintiff Fleitas on any theory of tort liability. Indeed, FP & L's failure to take the action it took might very well have formed the basis for a potential negligence action against it if anyone had been killed or injured due to Fleitas' intoxicated conduct on the premises. We are supported in the result we reach herein by two federal cases which have decided similar-type issues  seemingly the only cases on point in the country. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 284 F.2d 173 (D.C. Cir.1960), aff'd, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Bechtel Construction Corp. v. Detroit Carpenters District Council, 610 F. Supp. 1550 (E.D.Mich. 1985).
For the above-stated reasons, either one of which independently demonstrates reversible error below, the final judgment under review is reversed and the cause is remanded to the trial court with directions to enter a judgment in favor of the defendant FP & L.
Reversed and remanded.
NOTES
[1] It should be noted that the trial court excluded defense-offered evidence tending to establish that (1) FP & L ordered polygraph tests for both the accusing fellow employee and the plaintiff Fleitas, as part of its investigation of this case, and (2) the employee took such a polygraph test and passed it, but the plaintiff Fleitas declined to submit to such a test on advice of counsel. The defendant FP & L claims this evidentiary ruling was error on appeal. In view of the result we reach herein, it is unnecessary to pass upon this point, although it is dubious whether any error was committed here. See Southern Bell Telephone & Telegraph Co. v. Roper, 438 So.2d 1046, 1048 (Fla. 3d DCA 1983), aff'd on other grounds on appeal following remand, 482 So.2d 538 (Fla. 3d DCA 1986). Another evidentiary point is also raised by FP & L  which point we similarly find unnecessary to reach in view of our ultimate decision in the case.