447 So.2d 1058 (1984)
PPG INDUSTRIES, INC.
v.
BEAN DREDGING, et al.
No. 82-C-2201.
Supreme Court of Louisiana.
February 27, 1984.
*1059 Fred H. Sievert, Jr., Robert S. Dampf, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for applicant.
Cornelius G. VanDalen, Allen F. Campbell, Deutsch, Kerrigan & Stiles, New Orleans, for respondent.
LEMMON, Justice.
The issue in this case is whether a dredging contractor who negligently damaged a natural gas pipeline may be held liable for the economic losses incurred by the pipeline owner's contract customer who was required to seek and obtain gas from another source during the period of repair. Thus, this case brings into focus the broad question of recovery of an indirect economic loss incurred by a party who had a contractual relationship with the owner of property negligently damaged by a tortfeasor.[1] We conclude that while the situation giving rise to the question in this case falls literally within the expansive terms of La.C.C.Art. 2315, in that the dredging contractor's "act ... cause[d] damage to another", the customer cannot recover his indirect economic loss.[2] For the policy reasons hereinafter stated in a duty-risk analysis, we hold that the damages to the economic interest of the contract purchaser of *1060 natural gas, caused by a dredging contractor's negligent injury to property which prevents the pipeline owner's performance of the contract to supply natural gas to the purchaser, do not fall within the scope of the protection intended by the law's imposition of a duty on dredging contractors not to damage pipelines negligently.
Bean Dredging Company's dredging operations in the Calcasieu River caused damage to Texaco's natural gas pipeline. As a result, Texaco was unable to fulfill its contract to supply natural gas to PPG Industries for operation of its manufacturing plant, and PPG had to obtain fuel from another source at an increased cost. PPG filed this suit against Bean, seeking to recover the increased cost of obtaining natural gas. Bean filed an exception of no cause of action, contending that Louisiana has never recognized the right of recovery for negligent interference with contractual relations.
The trial court sustained Bean's exception of no cause of action. The court of appeal affirmed, relying on Forcum-James Co. v. Duke Transportation Co., 231 La. 953, 93 So.2d 228 (1957). 419 So.2d 23. We granted certiorari. 422 So.2d 151.
When the question of recovery of indirect economic losses caused by a negligent injury to property that interferes with contractual relations has been presented in previous cases, the courts of this state have generally denied recovery without analyzing the problem, taking a mechanical approach to the unreasoned conclusion that the petition fails to state a cause of action for which relief can be granted. Most cases have cited Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), and Forcum-James Co. v. Duke Transportation Co., above, which were relied on by the court of appeal in the present case. See, for example, Desormeaux v. Central Industries, Inc., 333 So.2d 431 (La.App. 3rd Cir.1976), cert. denied 337 So.2d 225 (La.1976); Messina v. Sheraton Corporation of America, 291 So.2d 829 (La.App. 4th Cir.1974).
In Robins, an admiralty case, the charterer of a vessel sought recovery of damages for its loss of use while the vessel was out of service after the dry dock operator negligently damaged its propeller. The Supreme Court denied recovery on the basis that the negligent repairer, who acted unintentionally while unaware of the contract of charter, cannot be held liable unless the party seeking damages had a proprietary interest in the damaged property.
Although knowledge does not seem to be a relevant factor to the determination of the defendant's liability to the charterer, the case has been cited countless times for the proposition that recovery is generally denied for negligent interference with contractual relations.[3] A better reasoned explanation for the Robins decision was suggested in F. Harper & F. James, The Law of Torts § 6.10 (1956), as follows:

*1061 "It is the reluctance of the Court to hold the tort-feasor liable, in addition to the physical damage to the vessel, for the value of two bargains. Under the contract with the owners, the charterers were excused from paying rent while the ship was laid up for repairs. This loss was included in the settlement between the defendants and the owners. Having made good one bargain, the tort-feasor is now asked to make good the still better bargain of the charterer. This, conceivably, could go on and on. The Court drew the line after the first. The multiplicity of actions and the unforeseeable extension of liability may well have influenced the Court in denying the charterer's claim, as a matter of policy." (Emphasis supplied.)
Similar policy considerations lead to our decision in the present case. Under the alleged facts, there appears to be no question that Bean is liable to Texaco for the costs of repairing the pipeline and for the direct economic losses sustained by Texaco during the period of repair.[4] However, the rule of law which prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property must be held legally responsible to all persons for all damages flowing in a "but for" sequence from the negligent conduct.
Rules of conduct are designed to protect some persons under some circumstances against some risks. Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60 (1956). Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in the terms of the moral, social and economic values involved, as well as with a view toward the ideal of justice. See Entrevia v. Hood, 427 So.2d 1146 (La.1983).
There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by Texaco because of the damage to its property. As noted, however, a rule of law is seldom intended to protect every person against every risk. It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner. It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss.
Moreover, imposition of responsibility on the tortfeasor for such damages could create liability "in an indeterminate amount for an indeterminate time to an indeterminate class". Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931). If any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant, they arguably sustained damages which in all likelihood would not have occurred but for defendant's negligence. If any of PPG's customers had contracted to purchase products that PPG could not produce and deliver because of the accident, perhaps they sustained damages which in all likelihood would not have occurred but for defendant's negligence. Because the list of possible *1062 victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages. See James, Limitations on Liability for Economic Loss Caused by Negligence; A Pragmatic Approach, 25 Vand.L.Rev. 43 (1972).[5]
We conclude that the duty allegedly violated in the present case did not encompass the particular risk of injury sustained by PPG and did not intend protection from the particular loss for which recovery is sought in PPG's petition.
Accordingly, the judgments of the lower courts are affirmed.
DIXON, C.J., concurs.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I applaud the majority's applying a duty risk analysis in the consideration of tort recovery for negligent interference with contractual relations, and its abandoning the per se exclusion of such damages which our courts have heretofore adopted on the heels of Robins and Forcum-James.[1]
Where I disagree, is in the majority's determination that PPG's economic loss, from added fuel cost, is not a risk encompassed within the duty not to negligently injure Texaco's pipelines. PPG's loss of profits; PPG's employees' loss of jobs and income; PPG's customers' losses, because PPG could not produce and deliver; are all economic losses which might properly be determined to fall outside the scope of the protection intended by the law's imposing a duty on dredging contractors not to damage pipelines negligently. The same cannot be said for PPG's added fuel cost.
Bean was dredging the waterway that ran right along the side of PPG's plant. There were signs along the waterway warning of the existence of the gas pipeline and cautioning against dredging in the area. There were also maps of the water bottom showing the pipelines. At the time Bean negligently dredged through the waterway, there could have been no doubt to anyone that the pipeline in question was providing PPG with its fuel to run its plant. The damages suffered by PPG were not unforeseen, at least as far as the added fuel costs go.
If PPG is to be denied its added fuel cost I can perceive no instance in which a nonowner of negligently damaged property may recover from a tortfeasor. In light of the result here it would probably have been better if the majority had simply affirmed the jurisprudential rule established in Robins and Forcum-James which has prevailed so long.
NOTES
[1] Recovery of economic losses for negligent interference with contractual relations is almost uniformly denied in other jurisdictions. See Restatement (Second) of Torts § 766 C comment a (1977). On the other hand, recovery for intentional interference with contractual relations has been permitted in every jurisdiction in this country except Louisiana. Malone, The Work of the Louisiana Appellate Courts for the 1963-1964 TermTorts, 25 La.L.Rev. 341 (1965). See also W. Prosser, Law of Torts § 129 at 930 (4th Ed.1971). There is considerable sentiment for permitting recovery in Louisiana for intentional interference with contracts, such as by the deliberate inducing of breach of contract. However, that issue is not presented in this case.
[2] La.C.C.Art. 2315 provides in pertinent part:

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
[3] The Supreme Court of Louisiana relied on Robins in deciding the Forcum-James case. The plaintiff in Forcum-James was a contractor who was required by a contract with the Department of Highways to repair a state-owned bridge that had been damaged by the tortfeasor. Plaintiff sued the tortfeasor to recover the cost of the repairs. The court held that the state, as owner, was the proper party to sue for the damage to the bridge and maintained an exception of no right of action as to plaintiff's suit against the tortfeasor. As to plaintiff's damages sustained by reason of having to repair the bridge, the court, relying on Robins, stated that "where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation". 93 So.2d at 230.

The obvious purpose of the Forcum-James decision was to prevent the tortfeasor from having to pay twice for the same damage, and the court in effect required that suit for the damage to the bridge be filed by either the owner of the bridge or a party subrogated to the rights of the owner. Because evidence of subrogation had been excluded in the trial court, the court remanded for introduction of such evidence.
The instant case presents a different, but related, problem. In Forcum-James, the cost of repairing the bridge was a loss to be recovered by either one party or the other, but not both. Here, only one party was entitled to recover the cost of repairing the pipeline, but both Texaco and PPG (and perhaps other parties) incurred economic losses during the period of repair that would not have been incurred but for the tortfeasor's negligence.
[4] For purposes of the exception of no cause of action, the court must accept as proved facts the allegations of the petition that Bean negligently damaged the pipeline, that as a result of the accident Texaco was unable to deliver natural gas to PPG in accordance with their contract, and that PPG thereby sustained economic losses.
[5] In the article Professor James argues that Robins was illogical in denying recovery for the charterer for lost business resulting from boat damage simply because the charterer did not own the boat. He points out that the injury was neither unforeseeable nor unlimited, that the damages would have been determined had plaintiff been the owner, and that questions of multiple liability, proper plaintiffs, and protection of settlements could be handled by regular procedural devices. Id. at 56.
[1] Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927); Forcum-James Co. v. Duke Transportation Co., 231 La. 953, 93 So.2d 228 (1957).