449 So.2d 718 (1984)
Lewis BABIN, et al., Plaintiffs-Appellants,
v.
TEXACO, INC., et al., Defendants-Appellees.
No. 82-396.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
Rehearing Denied May 7, 1984.
Haik, Haik & Minvielle, Theodore M. Haik, Jr., New Iberia, for plaintiffs-appellants.
Voorhies & Labbe, Amos H. Davis, Lafayette, Caffery, Oubre & Dugas, Patrick T. Caffery, New Iberia, for defendants-appellees.
Before CULPEPPER, DOUCET and YELVERTON, JJ.
CULPEPPER, Judge.[*]
This is a tort action instituted by Lewis Babin, et al., filed as a class action action Texaco, Inc. and Wilson Brothers Corporation alleging that they are joint tort-feasors. Plaintiffs are employees of the Diamond Crystal Salt Company. The Diamond Crystal Salt mine was flooded when an oil drilling rig, owned by and operated by the defendants, pierced the salt dome allowing the waters of Lake Peigneur to pour into the mine. This catastrophe resulted in the closing of the mine and the laying off of approximately 250 Diamond Crystal employees. As a result of losing their jobs, the miners lost their retirement benefits, future wages, life and health insurance, and other fringe benefits. Those miners in the mine at the time of the accident also allege that they suffered mental and emotional anguish which resulted in loss of salary.
Texaco filed and was granted an Exception of Lis Pendens as there are some similar suits pending in Federal Court. Hence, the claims against Texaco are not before this court.
The stay of proceedings in Federal Court did not affect defendant Wilson Brothers who is not a party to the federal action, *719 inasmuch as they lack complete diversity with the miners. Wilson Brothers filed a Motion for Summary Judgment, which the district court granted, dismissing the claims of the miners for their loss of salary, loss of retirement benefits, and loss of fringe benefits. The Summary Judgment did not dismiss the claims of the miners for damages caused by physical injury, personal property losses, and/or mental anguish. The plaintiff-miners have appealed the Summary Judgment.
The only issue presented in this appeal is whether or not the plaintiff-miners have a cause of action against the defendant Wilson Brothers for loss of salary, loss of retirement benefits and loss of fringe benefits.
In Forcum-James Co., Inc. v. Duke Transportation Co., 231 La. 953, 93 So.2d 228 (1957), plaintiff had a contract with the state to build a new bridge and to maintain a temporary bridge during construction. Defendant's overloaded truck negligently damaged the temporary bridge, which was owned by the state. Plaintiff sought damages on the theory that defendant's tort had caused plaintiff to become contractually obligated to repair the bridge. The Louisiana Supreme Court applied the rule of Robin's Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) and stated:
"It is a basic principle of the law that a tortfeasor is responsible only for the direct and proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation ...."
"Even the broad language used in Article 2315 of our Code does not justify a departure from the above stated doctrine. Indeed, to permit a person to proceed against a wrongdoer in every instance where such person has sustained damage by reason of his contractual obligation to the injured party would open the door to the prosecution of claims for damages indirectly and remotely connected with the tortious act and encourage a multiplicity of suits from which numerous conflicts of interest might ensue. Parties situated in plaintiff's position can readily protect themselves by obtaining from the injured person a conventional subrogation of the latter's rights and, thus, the tortfeasor can be made to respond for the direct and foreseeable consequences of his act in a single suit."
This Court was recently asked to re-examine the Forcum-James doctrine in PPG Industries, Inc. v. Bean Dredging Corp., 419 So.2d 23 (La.App. 3rd Cir.1982) in which Texaco had a contract to furnish natural gas to PPG. Defendant's dredging operations in the Calcasieu River negligently damaged Texaco's pipeline, as a result of which Texaco was unable to fulfill its contract to supply gas to PPG, who had to obtain gas from another source at a higher cost. PPG sued the dredging company for the increased cost of the gas. We affirmed the district court judgment sustaining defendant's exception of no cause of action and dismissed its suit, citing Forcum-James and Robin's Dry Dock, supra.
Subsequent to our decision, the Supreme Court granted writs in PPG Industries, Inc. v. Bean Dredging Corp., 422 So.2d 151 (La.1982). Upon the request of appellant, we delayed deciding the present appeal pending the Supreme Court's decision in PPG.
On February 27, 1984, the Supreme Court affirmed the decision of this Court in PPG Industries, Inc. v. Bean Dredging Corp., 447 So.2d 1058 (1984). The Supreme Court stated:
"For the policy reasons hereinafter stated in a duty-risk analysis, we hold that the damages to the economic interest of the contract purchaser of natural gas, caused by a dredging contractor's negligent injury to property which prevents the pipeline owner's performance of the contract to supply natural gas to the purchaser, do not fall within the scope of the protection intended by the law's imposition *720 of a duty on dredging contractors not to damage pipelines negligently.
* * * * * *
"... imposition of responsibility on the tortfeasor for such damages could create liability `in an indeterminate class'. Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931). If any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant, they arguably sustained damages which in all likelihood would not have occurred but for defendant's negligence .... Because the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages. See James, Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Approach, 25 Vand.L.Rev. 43 (1972). id." (footnote omitted).
On its face the PPG opinion appears to control any claims by the miners for damages for loss of salary, loss of retirement benefits and loss of fringe benefits. These are all losses which the miners suffered by reason of the contractual obligations between the miners and their employer.
Following the Supreme Court decision in PPG, plaintiffs filed in this Court a supplemental brief attempting to distinguish PPG from the present matter. Plaintiffs state there are three separate and distinct groups of miners within the class of plaintiffs, each of which has a distinct cause of action as a result of the collapse of the salt mine:
1. Those miners who were employees at the time of the accident should have a cause of action for damages based upon negligent interference with contractual rights.
2. Those miners who were in the mine at the time of the accident should have a cause of action for the loss of wages due to the mental anguish they experienced as a result of the accident.
3. Those miners who witnessed, either directly or indirectly, the loss of their property should have a cause of action for emotional distress suffered by reason of witnessing the destruction of their property and/or property rights.
We will address each of the three listed groups separately. The first group is those miners seeking damages based upon negligent interference with contractual rights. Plaintiffs argue that under the duty-risk analysis used by the Supreme Court in PPG, "a reasonable man should have known of the existence of the salt mine in operation (with men working in it) located directly under the oil drilling operation being conducted by the defendants, thereby creating an unreasonable risk of harm. The duty violated in this instant cause does encompass the particular risk of injury or harm sustained by the miners. This was not true in the PPG case. The foreseeability of harm and the directness of consequence is easily within the ambit of risk created by the defendants in the miners' case."
We find no merit in this argument by plaintiffs. As we read the Supreme Court decision in PPG, it is based purely on the policy consideration under a duty-risk analysis that the damages to the economic interest of the contract purchaser of natural gas did not fall within the scope of the protection intended by the laws' imposition of a duty on dredging contractors not to damage pipelines negligently. This same rationale applies to the present case. In giving examples of the types of damages which would not be recoverable in PPG, the court listed those suffered "if any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant." This example squarely covers group 1 listed by plaintiffs in their supplemental brief.
As to groups 2 and 3 listed in plaintiff's supplemental brief, both urge a cause of action for damages for mental anguish or emotional distress. We have pointed out above that the summary judgment appealed *721 in the present matter dismissed the claims of the miners only for their loss of salary, loss of retirement benefits and loss of fringe benefits. The summary judgment did not dismiss the claims of the miners for damages caused by physical injury, personal property loss, and/or mental anguish. Thus, the issue of whether groups 2 or 3 have a cause of action for damages for mental anguish or emotional distress is not before us.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, assigned Pro Tempore