490 So.2d 1109 (1986)
COMMUNITY COFFEE COMPANY, INC. and Arkwright-Boston Manufacturers Mutual Insurance Company
v.
TRI-PARISH CONSTRUCTION & MATERIALS INC., The Rose D., Inc., Global Special Risks, Inc., and Mission Insurance Company. (Two cases).
Nos. CW 85-1314, CW 85-1458.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Michael McAlpine, Martin Grayson, Alan Yacoubian, New Orleans, for defendant/appellantThe Rose D., Inc.
John Moore, Baton Rouge, Michael Quinn, for plaintiff/appellee Community Coffee.
*1110 Alan K. Breaud, Lafayette, for defendant-appellant Tri-Parish Const.
Before EDWARDS, LANIER and PONDER,[*] JJ.
LANIER, Judge.
This is a suit for damages in tort. The defendants filed peremptory exceptions pleading the objection of no cause of action. After a hearing, the trial court overruled the exceptions. The defendants sought supervisory writs to review the trial court rulings. We granted and consolidated both writs to review the trial court judgments. Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).

FACTS
The objection of no cause of action raised in a peremptory exception tests the legal sufficiency of the petition, and all the allegations of the petition are accepted as true. No evidence may be introduced to support or controvert the facts alleged. An objection of no cause of action is sustained only where the law affords no remedy to plaintiff under the allegations of his petition. La.C.C.P. arts. 927(4) and 931; Hubbs v. Canova, 427 So.2d 875 (La.App. 1st Cir.1982). If a petition states a cause of action on any ground or portion of the demand, the objection of no cause of action must be overruled. Rodriguez v. American Bankers Insurance Company of Florida, 386 So.2d 652 (La.1980).
The following pertinent facts are pleaded in the petition:

2.
On or about April 5, 1983, a coffee roasting machine belonging to Community Coffee Company, Inc., a petitioner herein, located in the Parish of West Baton Rouge, Louisiana, was damaged when a crane with a raised boom, owned by Tri-Parish Construction & Materials, Inc., was being transported by a tug, the Rose D, owned by The Rose D, Inc. snagged and tore down electric power lines belonging to Gulf States Utilities Company.
3.
As a result of the accident described in paragraph 2 above, direct physical damage was caused to the property of Community Coffee Company, Inc. As a direct causal result of the power outage a coffee roasting machine belonging to Community Coffee Company, Inc. ceased to operate. As a result, part of the contents of the machine overheated and injured the interior of the machine. As a further direct causal result, some of the contents of the machine caught fire, also damaging the machine.
....
8.
Petitioner, Arkwright-Boston Manufacturers Mutual Insurance Company, is the physical damage insurer of Community Coffee Company, Inc. In accord with its policy contract with Community Coffee Company, Inc., Arkwright-Boston Manufacturers Mutual Insurance Company was obligated to pay, and did in fact pay, the sum of Seventy One Thousand Seventy and 11/100 Dollars ($71,070.11) and that the remaining amount of Sixteen Thousand and no/100 Dollars ($16,000.00) was paid by Community Coffee, Inc. Petitioner Arkwright-Boston Manufacturers Mutual Insurance Company further alleges that it is subrogated both legally and conventionally against defendants herein for the full amount of its payment.

CAUSE OF ACTION UNDER LOUISIANA LAW
The principal arguments of the parties concern whether or not there is a cause of action under Louisiana law. Relators contend respondents have no cause of action because they "seek indirect damages as a *1111 result of tortious interference with its contractual relationship with a third party which is not within the scope of risk encompassed in the duty imposed upon Relators in their activity." Relators cite PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984) as authority. The respondents contend they did not sustain indirect economic loss, but sustained direct damage to property as a result of the tortious acts of the relators. Respondents argue that the risk of such damage is within the ambit of the protection of the duty breached by the relators and cite Consolidated Aluminum Corporation v. C.F. Bean Corporation, 772 F.2d 1217 (5th Cir.1985) as authority.
The PPG and Consolidated cases arose out of the same incident.[1] On April 5, 1980, Bean Dredging Corporation (Bean) was dredging the Calcasieu River Ship Channel when the cutterhead on one of the dredges struck and ruptured a 12-inch natural gas pipeline owned by Texaco. As a result of this accident, Texaco was unable to fulfill its contract to supply natural gas to PPG for its plant and PPG had to obtain fuel from another source at an increased cost. Also, as a result of this accident, Texaco was unable to comply with its contractual obligation to supply Consolidated with the gas necessary for the operation of its aluminum reduction plant. The accident caused the gas supply at the plant to fall below the minimum necessary to operate the plant. This caused the reduction process to stop and resulted in heavy physical damage.
PPG filed suit in state court seeking to recover the increased cost of obtaining natural gas. Bean filed a peremptory exception pleading the objection of no cause of action contending PPG had no right of recovery for negligent interference with contractual relations. The trial court sustained the exception, and the court of appeal affirmed. PPG Industries, Inc. v. Bean Dredging Corporation, 419 So.2d 23 (La.App. 3rd Cir.1982). The Louisiana Supreme Court granted a writ and affirmed holding that "the damages to the economic interest of the contract purchaser of natural gas, caused by a dredging contractor's negligent injury to property which prevents the pipeline owner's performance of the contract to supply natural gas to the purchaser, do not fall within the scope of the protection intended by the law's imposition of a duty on dredging contractors not to damage pipelines negligently." PPG, 447 So.2d at 1059-1060. To put the PPG claim in perspective, the Court observed that there was "no question that Bean is liable to Texaco for the costs of repairing the pipeline and for the direct economic losses sustained by Texaco during the period of repair." [footnote omitted.] PPG, 447 So.2d at 1061. The Court observed that rules of conduct protect some persons under some circumstances against some risks. In making the policy decision of what is within the "reach of the rule", a court should consider the following factors: (1) ease of association between the rule of conduct, the risk of injury and the loss sought to be recovered; (2) moral, social and economic values involved, with the view toward the ideal of justice; and (3) whether the imposition of responsibility on the tort-feasor for such damages would create liability in an indeterminate amount for an indeterminate time to an indeterminate class. The Court found (1) there was difficulty with ease of association; (2) it was highly unlikely the moral, social and economic considerations underlying the duty encompassed the risk that a third person party who had contracted with the owner of the injured property will suffer an economic loss; and (3) the list of possible victims and the extent of economic damages might be expanded indefinitely. After considering these factors, the Court held "the duty allegedly violated in the present case did not encompass the particular risk of injury sustained by PPG and did not intend protection from the particular loss for which recovery is sought in PPG's petition." [emphasis added.] PPG, 447 So.2d at 1062. See also Babin v. Texaco, *1112 Inc., 449 So.2d 718 (La.App. 3rd Cir. 1984), writ denied, 456 So.2d 165 (La.1984).
Consolidated filed suit in federal court for physical damage and economic damage. Bean filed a motion for summary judgment on Consolidated's claim of negligence for damages to its plant's equipment. The federal district court granted a partial summary judgment holding that "no cause of action exists for negligent interference with contract, even where the plaintiff has sustained physical damages arising out of the interference with contract." Consolidated, 772 F.2d at 1221. The federal court of appeals reversed and remanded. Although it did not specifically follow a duty-risk analysis, the court recognized a distinction between economic damages and physical damages caused by negligent interference with performance of a contract and found (1) there was an ease of association between physical damage and the duty, and (2) the number of potential plaintiffs suffering physical harm is generally neither as indeterminate nor as possibly infinite as those suffering only economic harm. Citing the Restatement (Second) of Torts, § 766 C, the court observed that the weight of authority held that a plaintiff could recover for physical damage caused by negligent interference with the performance of a contract. However, in a per curiam on rehearing, the court substantially limited its holding as follows:
We further conclude that the mere existence of a contract between Texaco (whose property suffered the most immediate harm from the defendant's dredging) and Consolidated does not create a legal bar to Consolidated's claim against Bean for negligent dredging. We in no way intimated that Consolidated could recover for "negligent interference with contract." Nor did we hold that summary judgment for the defendant would necessarily be improper on the facts of the instant case. Rather, we remanded because the district court expressly omitted to review the issue of foreseeability with regard to negligent dredging. We expressly declined to reach the question of "whether Consolidated's claim of negligence would withstand scrutiny under a foreseeability test," 772 F.2d at 1218 n. 2, and left the application of traditional tort principles, including foreseeability and the related concept of legal duty, for the trial court to determine on remand, at 1224.
(emphasis added.)
[Consolidated, 772 F.2d at 1224.]
The petition alleges the defendant tug owner was transporting a crane owned by the defendant construction company; the boom on the crane was in a raised position and negligently snagged and tore down electric power lines owned by a power company causing a power outage at the plaintiff's coffee plant; and, as a result of the power outage, physical damage was caused to the plaintiff's property. Implicit in these factual allegations is the fact that the negligent damaging of the power lines interfered with the power company's contractual obligation to deliver its product (electricity) to the plaintiff. In Forcum-James Co. v. Duke Transportation Co., 231 La. 953, 93 So.2d 228, 230-231 (1957), the Louisiana Supreme Court observed as follows:
It is a basic principle of the law that a tort-feasor is responsible only for the direct and proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation.... This appears to be the general rule, to which the Supreme Court of the United States has given its stamp of approval. Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 135, 72 L.Ed. 290. In that case, Justice Holmes remarked that "* * * no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. * * *1113 The law does not spread its protection so far."
Even the board [sic] language used in Article 2315 of our Code does not justify a departure from the above stated doctrine. Indeed, to permit a person to proceed against a wrongdoer in every instance where such person has sustained damage by reason of his contractual obligation to the injured party would open the door to the prosecution of claims for damages indirectly and remotely connected with the tortious act and encourage a multiplicity of suits from which numerous conflicts of interest might ensue. Parties situated in plaintiff's position can readily protect themselves by obtaining from the injured person a conventional subrogation of the latter's rights and, thus, the tort-feasor can be made to respond for the direct and foreseeable consequences of his act in a single suit. [Footnotes omitted.]
Forcum-James appears to establish the dogmatic rule that there is no cause of action for tortious (intentional or negligent) interference with contracts.
Louisiana is the only American jurisdiction holding that there is no cause of action for tortious intentional interference with contracts. LeBlanc v. Oakmont Marine Corporation, Specialized Lorain Division, 401 So.2d 397 (La.App. 1st Cir.1981); B. Schewe, Obligations Developments in the Law, 1983-84, 45 La.L.Rev. 447, 465-466 (1984); W. Malone, The Work of the Louisiana Appellate Courts for the 1963-1964 TermTorts, 25 La.L.Rev. 334, 341 (1965). However, two recent Louisiana Supreme Court cases indicate in dicta that some members of the Court may want to reexamine this portion of the Forcum-James holding. Sanborn v. Oceanic Contractors, Inc., 448 So.2d 91, 95 at n. 5 (La.1984); PPG, 447 So.2d at 1059 at n. 1.
In PPG, the Court, utilizing the duty-risk analysis, reaffirmed that there is no cause of action for economic losses resulting from negligent interference with contractual relations. The jurisprudence following Forcum-James consistently so held. Illinois Central Gulf Railroad Company v. Texaco, Inc., 467 So.2d 1141 (La.App. 5th Cir.1985), writ denied, 472 So.2d 27 (La. 1985) (common carrier suffered economic loss due to negligent conversion of chemicals belonging to its contractual customer); Baughman Surgical Associates, Ltd. v. Aetna Casualty & Surety Co., 302 So.2d 316 (La.App. 1st Cir.1974) (medical corporation suffered economic losses due to negligent injury of its doctor employee); Messina v. Sheraton Corporation of America, 291 So.2d 829 (La.App. 4th Cir.1974) (fight promoter suffered economic losses due to negligent injury of fighter with whom he had a contract); Kaiser Aluminum & Chemical Corporation v. Marshland Dredging Company, 455 F.2d 957 (5th Cir. 1972) (manufacturer suffered economic damages when heavy anchor was dropped and punctured gas pipeline, interrupting gas service to manufacturer's plant).
At issue in the instant case is whether or not there is a cause of action for negligent interference of a contractual relation which causes physical damage. Forcum-James holds that there is no such cause of action. Subsequent intermediate appellate court decisions seem to follow this holding. In Ledet v. Continental Grain Co., 380 So.2d 655 (La.App. 4th Cir.1980), it was alleged a bride-to-be suffered economic and physical damages (pain, suffering, mental anguish and loss of support, consortium and companionship) when the negligence of the defendants caused the death of her fiance and broke her contract to marry. The court held the petition failed to state a cause of action. In Desormeaux v. Central Industries, Inc., 333 So.2d 431 (La. App. 3rd Cir.1976), writ denied, 337 So.2d 225 (La.1976), it was alleged that the negligence of the defendants broke a culvert owned by a third person who contractually supplied water for the plaintiff's rice crop. Because the water supply was insufficient, the plaintiff's rice crop was physically damaged and only produced 10.84 barrels per acre instead of 29 barrels per acre. The court cited Forcum-James, noted that the Forcum-James rule had been criticized and found the plaintiff had no cause of action. *1114 The Louisiana Supreme Court denied a writ with five Justices indicating that "[t]he result is correct." Desormeaux v. Central Industries, Inc., 337 So.2d 225 (La.1976). Justice Tate dissented, indicated "the issue is correctly decided under existing jurisprudence" and stated that Forcum-James should be reexamined "insofar as applicable to situations such as is here presented."
Forcum-James has not been overruled.[2] Trial courts and courts of appeal are bound to follow the last expression of law of the Louisiana Supreme Court. Pelican State Associates, Inc. v. Winder, 253 La. 697, 219 So.2d 500 (1969); D'Antoni v. D'Antoni, 432 So.2d 926 (La.App. 4th Cir. 1983); Phillips v. Nereaux, 357 So.2d 813 (La.App. 1st Cir.1978). Although we may disagree with a ruling of the Louisiana Supreme Court, we are not free to disregard it. State v. Petterway, 403 So.2d 1157 (La.1981); State v. Counterman, 461 So.2d 664 (La.App. 1st Cir.1984), affirmed, 475 So.2d 336 (La.1985). We are bound to follow Forcum-James herein. Hebert v. Louisiana & Arkansas Railway Company, 433 So.2d 807 (La.App. 1st Cir.1983). The petition of the respondents fails to state a cause of action under prevailing Louisiana law.

CAUSE OF ACTION UNDER ADMIRALTY TORT LAW
Respondents contend the facts in their petition clearly state a cause of action under maritime tort law. This contention appears to be correct. Under admiralty tort principles, there is no cause of action for negligent interference with a contract only when the damages sustained by the victim are solely economic. Where a tort-feasor negligently damages the property of a third party, which damage precludes the third party from performing a contractual obligation in favor of the victim and the third party's inability to perform causes physical damage to the person or property of the victim, a cause of action arises in *1115 admiralty tort law in favor of the victim. The physical injury to the victim or his property forms the basis of a tort independent of any contractual interest. Consolidated, 772 F.2d at 1218 and 1223-1224; Getty Refining and Marketing Company v. MT FADI B, 766 F.2d 829 (3rd Cir.1985); Domar Ocean Transportation, Ltd., Division of Lee-Vac, Ltd. v. M/V ANDREW MARTIN, 754 F.2d 616 (5th Cir.1985); State of Louisiana, ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019 (5th Cir.1985); Holt Hauling & Warehousing Systems, Inc. v. M/V MING JOY, 614 F.Supp. 890 (E.D.Penn.1985).
Because the petition states a cause of action under admiralty tort law, the peremptory exception pleading the objection of no cause of action was correctly overruled by the trial court.

DECREE
For the foregoing reasons, the writ of certiorari previously issued herein is recalled and the supervisory relief requested by the relators is denied. Relators are cast for the cost of this supervisory action.
WRIT OF CERTIORARI RECALLED.
NOTES
[*] Judge Elven E. Ponder, retired, appointed to hear appeals vice Judge John S. Covington, temporarily assigned to the Twenty-Fifth Judicial District Court.
[1] Consolidated, 772 F.2d at n. 12 on 1223-1224.
[2] In PPG, the Court did not per se apply the Forcum-James rule, but reached a Forcum-James result with a duty-risk analysis. Because PPG involved economic damages caused by negligent interference with contractual relations, it is not controlling herein. However, PPG does set forth how to make a duty-risk analysis in this type of case. The duty in the instant case is the same as in PPG; it is the "duty not to negligently damage property belonging to another." PPG, 447 So.2d at 1061. To determine the ambit of the protection of this duty, the Court in PPG analyzed the "risk of injury" and the nature of the "loss" in terms of (1) ease of association with the duty, (2) moral, social and economic values, and (3) whether or not liability would be created in an indeterminate amount for an indeterminate time to an indeterminate class.

The risk of injury in the instant case is the same as in PPG; it is the risk of negligent injury of the property of a third person that prevents the third person from contractually delivering a product to the plaintiff. In PPG, the Court observed it was much more difficult to associate the duty "in terms of the moral, social and economic values involved, with the risk of injury... sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner." PPG, 447 So.2d at 1061. In PPG, the Court concluded that "the duty allegedly violated in the present case did not encompass the particular risk of injury sustained by PPG ..." PPG, 447 So.2d at 1062.
In PPG, the loss was economic; in the instant case, it is physical. There is some ease of association between the duty and the physical damage sustained by the plaintiff herein; the negligence of the defendants interrupted the plaintiff's power supply and caused physical damage. Imposition of liability herein for physical damage caused by negligent interruption of the power supply would not appear to apply to an indeterminate class for an indeterminate time. The class (although possibly large) is determinate as those persons whose power was interrupted and who sustained physical damage. The time would be one year from the date of the damage. The amount might be indeterminate if these persons are allowed to recover economic damages with their physical damages.
It is much more difficult to associate the loss (physical damages) with pertinent moral, social and economic values. PPG did not define what these values were or how they could be found. Because the objection asserted herein is no cause of action, no evidence may be introduced, as a matter of law, to show what are these values. La.C.C.P. art. 931. In PPG, the Court observed that "[i]t is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer economic loss." [emphasis added.] PPG, 447 So.2d at 1061.