KNOLL, Judge.
The sole issue in this appeal is whether the imposition of liability on the Clerk of Court for an alleged violation of the duty imposed on him by LSA-C.C. Arts. 3393 and 3394 requires the existence of privity of contract between the damaged party and the Clerk of Court.
On February 7, 1985, W.B. McCartney Oil Co., Inc. (hereafter McCartney) recorded notice of its claim, in proper form as required by LSA-R.S. 9:4861 et seq., the Louisiana Oil, Gas, and Water Lien Statute, in the mortgage records of Grant Parish against AED-American Energy, Inc. (hereafter AED-American). Subsequently, on March 8, 1985, in proceedings entitled, “W.B. McCartney Oil Company, Inc. v. AED-American Energy, Inc.”, McCartney instituted suit against AED-American seeking recognition of its privilege, and on September 10, 1986, judgment was obtained in favor of McCartney and against AED-American in the amount of $42,-511.51, together with interest, attorney’s fees, and court costs. The judgment recognized and maintained McCartney’s privilege pursuant to LSA-R.S. 9:4861, and was duly recorded in the mortgage records of Grant Parish.
Later, following the same procedure outlined hereinabove, O.L. Ezell (hereafter Ezell) asserted a similar claim by filing an affidavit in the mortgage records of Grant Parish against AED-American. Ultimately, after filing suit to recognize his privilege, Ezell obtained a judgment against AED-American, and properly recorded it in the mortgage records of Grant Parish.
From the recordation data of the mortgage records of Grant Parish, McCartney’s judgment was superior to Ezell’s.
On February 5,1986, Ezell, pursuant to a writ of fieri facias issued at his request seeking seizure and sale of certain movable oil field equipment of AED-American, caused the property to be sold at sheriff’s sale; Ezell, the only bidder on the property, purchased it for $2,500. In connection with this sale, Sheriff L.R. Hataway (hereafter Hataway), as required by statute, requested J. Elray Lemoine, Clerk of Court and the parish recorder of mortgages, to issue a mortgage certificate and chattel mortgage certificate prior to the sheriff’s sale. When issued, the mortgage certificate omitted any mention of McCartney’s privilege and judicial mortgage, and instead, erroneously indicated that Ezell’s privilege and judicial mortgage was superior to all other claims.
After learning of the sale to Ezell, McCartney instituted suit against Hataway and Ezell, seeking annulment of the February 5, 1986, sheriff’s sale. Through a supplemental petition, McCartney alternatively sought damages from Tudor Insurance Company (hereafter Tudor), Lemoine’s liability insurer, for failure of the parish recorder to properly prepare the certificate of mortgage in connection with the February 5, 1986, sheriff’s sale.
In response to McCartney’s alternative claim, Tudor interposed exceptions of no right of action and no cause of action basically alleging that McCartney had no privity of contract with the parish recorder and therefore had no standing to sue. The district court sustained the exceptions and dismissed McCartney’s claim against Tudor.
*58 NO CAUSE OF ACTION
McCartney contends that the trial court erred in sustaining Tudor’s exception of no cause of action to its alternative claim against Tudor. It argues that LSA-C.C. Arts. 3393 and 3394 impose upon the parish recorder a public obligation, not dependent upon a contract or privity thereof.
We observe from the outset that although Tudor also asserted an exception of no right of action, contending no privity of contract between McCartney and the parish recorder, in essence such exception actually addresses whether the duty of the parish recorder under LSA-C.C. Arts. 3393 and 3394, one of the elements encompassed in a duty-risk analysis to determine the question of whether a cause of action was stated, extends to McCartney. Accordingly, we find that Tudor’s exception of no right of action is more properly an exception of no cause of action, and will be treated accordingly.
In Darville v. Texaco, Inc., 447 So.2d 473, at 474, 475 (La.1984), the Supreme Court stated:
“The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well pleaded facts in the petition must be accepted as true. La.C.C.Pro. art. 927; Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Haskins v. Clary, 346 So.2d 193 (La.1977). The general rule applicable to a trial of such exception is that an exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based; that is, unless the plaintiff has no cause of action under any evidence admissible under the pleadings. Haskins, supra, at 195; West v. Ray, 210 La. 25, 26 So.2d 221 (1946).”
Accordingly, we must first determine if McCartney has stated a cause of action against Tudor, even though McCartney did not request the issuance of the mortgage certificate which the parish recorder provided for the sheriff’s sale provoked by Ezell.
LSA-C.C. Art. 3393 provides:
“These officers [parish recorders] shall record on their register the acts which are presented to them, in the order of their date, and without leaving any intervals or blank space between them; and they are bound also to deliver to all persons who may demand them, a certificate of the mortgages, privileges or donations, which they may have thus recorded; if there be none, their certificate shall declare that fact.”
LSA-C.C. Art. 3394 provides, in pertinent part:
“The register of mortgages and the parish recorders performing the same duty, are answerable for injury resulting:
⅜ ⅝ ⅜ 5⅜ ⅜ He
(2) From omitting to mention in their certificates one or several acts existing on their registers, unless in this latter case the error proceeds from a want of exactness in the description, which can not be imputed to them_”
In determining tort liability the Louisiana Supreme Court set forth the proper inquiry under a duty-risk analysis in Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985), as follows:
“To establish a defendant’s liability and recover tort damages, the plaintiff must be able to answer affirmatively the following questions: 1) did defendant’s conduct contribute to the victim’s injury or is the defendant a cause of plaintiff’s harm (the causal relation issue)? 2) was the victim protected under a general rule or principle of law against the defendant’s conduct with respect to the injury inflicted on him (the duty issue)? 3) did defendant violate a duty with respect to the victim i.e., did the defendant act unreasonably (the negligence issue)? 4) have the plaintiffs sustained damages, and what is the extent thereof? Green, The Causal Relation Issue in Negligence Law, 60 Mich.L.Rev. 543, at 546 (1962).”
Under this analysis, our first inquiry must be whether the parish recorder’s act *59 contributed to or was a cause of McCartney’s injury. In reviewing the allegations of McCartney’s petition it is clear that the parish recorder’s negligence in failing to note McCartney’s judgment was at least a cause of McCartney’s injury — the sale of the oil field equipment to a third party without recognizing its superior privilege and judicial mortgage.
The second step in the duty-risk analysis requires a determination of whether the parish recorder violated a duty. We answer this inquiry affirmatively, finding that he violated the duty delineated in LSA-C.C. Art. 3394 which imposes civil liability for injuries resulting from incomplete mortgage certificates.
In the case sub judice, the critical inquiry is whether the legislatively mandated duty imposed on the parish recorder set forth in LSA-C.C. Art. 3394 was intended to protect McCartney from the particular harm which he allegedly suffered.
In his excellent concurring opinion in LeBleu v. Forum Ins. Co., 479 So.2d-972 (La.App. 3rd Cir.1985), Judge Guidry remarked:
“In discussing this step in the duty-risk analysis, the Supreme Court, in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), stated:
‘... Foreseeability is not always a reliable guide, and certainly it is not the only criterion for determining whether there is a duty-risk relationship. Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the, scope of the duty owed because of that conduct. Neither are all risks excluded from the scope of duty simply because they are unforeseeable. The ease of association of the injury with the rule relied upon, however, is always a proper inquiry. Prosser, Law of Torts (3rd ed. 1964), 282 ff.
Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court’s own judgment of the scope of protection intended by the Legislature. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298; Pierre v. Allstate Ins. Co., [257 La. 471, 242 So.2d 821], supra. ...
“ ‘All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.’ ” Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956).’ (Footnotes omitted).
In PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984), the Supreme Court expanded upon its reasoning in Hill as follows:
‘... Rules of conduct are designed to protect some persons under some circumstances against some risks. Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60 (1956). Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in the terms of the moral, social and economic values involved, as well as with a view toward *60 the ideal of justice. See Entrevia v. Hood, 427 So.2d 1146 (La.1983).’
Thus, in determining whether the duty imposed by La.C.C. Art. 3394 was intended to protect plaintiff from the injury which he sustained, one must consider the ease of association between the rule of conduct, the risk of injury and the loss sought to be recovered.”
In the present case, we find that there is an ease of association between the duty imposed on parish recorders by LSA-C.C. Art. 3394 to issue accurate and complete mortgage certificates and the particular risk of injury which befell McCartney.
We find Federal Deposit Ins. Corp. v. Greenup, 517 So.2d 1274 (La.App. 4th Cir.1987), writ denied, 519 So.2d 145 (La.1988), distinguishable. In Greenup our brethren of the Fourth Circuit determined that the duty imposed upon a parish recorder did not extend to Leone, a purchaser at a sheriffs sale, because the purchaser had not directly relied upon the erroneous mortgage certificate. Unlike Leone, in the case sub judice, McCartney, the superior privilege holder as shown in the parish recorder’s records, relied on the parish recorder to correctly prepare the mortgage certificate and to duly note its privilege as a superior claim. The parish recorder’s omission wronged McCartney because it robbed it of the protection it would have had under LSA-C.C.P. Art. 2372 (sale of property at sheriffs sale is made subject to superior real charges) and Art. 2373 (payment to creditors is made in order of mortgage superiority) which would have been applicable in the normal setting where the parish recorder has listed all the superior privileges on the mortgage certificate.
We now turn to the final element of the duty-risk analysis, damages. Tudor contends that, assuming arguendo that even if the other elements of the duty-risk analysis would be satisfied, McCartney has not been damaged. We disagree.
We preface our discussion of the issue of damages with a reminder that McCartney’s action against Tudor is an alternative claim to its main demand against Hataway and Ezell for the nullification of the sheriff’s sale. Only if the sheriff’s sale is good (not null), does McCartney’s alternative claim against Tudor become operative. With that background, we find, for the following reasons, that McCartney has stated a sufficiently cognizable claim for damages in its cause of action against Tudor.
Tudor first contends that McCartney has not been damaged because of the operation of LSA-C.C.P. Arts. 2372 and 2378.
LSA-C.C.P. Art. 2372 provides:
“The property is sold subject to any real charge or lease with which it is burdened, superior to any mortgage, lien, or privilege of the seizing creditor.”
LSA-C.C.P. Art. 2378 provides:
“When the purchaser fails to pay a mortgage superior to the mortgage, lien, or privilege of the seizing creditor, the superior mortgage may be enforced under any of the applicable provisions of Articles 3721 through 3743.
When the purchaser fails to pay a lien or privilege superior to the mortgage, lien, or privilege of the seizing creditor, the superior lien or privilege may be enforced in an ordinary proceeding against the purchaser or, if the latter has sold the property, against the then owner thereof.”
After thoroughly examining the procedural articles relative to a sheriff’s sale, we find that Articles 2372 and 2378 apply to those situations where the parish recorder’s mortgage certificate has listed all the superior mortgages, liens, or privileges on the mortgage certificate. We find that those articles are inapplicable where the superior mortgages, liens, or privileges have been erroneously omitted. In such case a sheriff’s adjudication and sale is null. LSA-C.C.P. Art. 2337.
Tudor next contends that Pitts v. Mason, 418 So.2d 27 (La.App. 3rd Cir.1982), writ denied, 422 So.2d 423 (La.1982), further delineates why McCartney has not been damaged by the parish recorder’s omission. The Pitts decision stands for the proposition that the purchaser at a sheriff’s sale becomes responsible for any superior recorded mortgages, liens, or privileges. *61 However, although we are in agreement with our pronouncement in Pitts, we find that the Pitts holding does not necessarily mean that a superior lien holder, overlooked in a mortgage certificate prepared in connection with a sheriffs sale, acquires a right against the purchaser at a sheriffs sale — the proper remedy in such a case, as outlined hereinabove, being to seek nullification of the sale. On this basis, then, we do not find that the Pitts decision is dispos-itive of the damage issue presented.
Finally, Tudor contends that McCartney has not been damaged because, despite the parish recorder’s omission, it still has its privilege and judicial mortgage on the seized property and can execute on it. Whereas, we are generally in agreement with Tudor’s statement, we find that it is conclusionary, based on the assumption that the property will be found and will generate sufficient funds at the sheriffs sale to satisfy its claim, and oversimplifies the matter. What if Ezell has removed the property out of state? See LSA-R.S. 9:4861.2. What if the property can not be located? What if McCartney was able to locate the property, but because of deterioration, lack of maintenance, or damage suffered since the sale to Ezell, the property is no longer as valuable?
McCartney has alleged in its petition that as a result of the erroneous sale to the inferior creditor it “has been denied the opportunity to obtain satisfaction of its judgment.” Considering that at this stage of the proceeding we are faced with an exception of no cause of action, we find that although McCartney may have difficulty proving damages, it has nonetheless made general allegations concerning damages sufficient to state a cause of action and proceed to trial on the merits.
For the foregoing reasons, we reverse the trial court’s judgment which sustained Tudor’s exceptions of no right of action and no cause of action. IT IS ORDERED, ADJUDGED AND DECREED that Tudor’s exceptions of no cause of action and no right of action are overruled, and this matter is remanded to the district court for trial on the merits. Costs of the trial court and this appeal are assessed to Tudor.
REVERSED AND REMANDED.
DOUCET, J., dissents for written reasons assigned.
KING, J., dissents for written reasons assigned by DOUCET, J. and for written reasons assigned.