SAUNDERS, J.,
dissents and assigns written reasons.
|U do not feel that our supreme court’s decision in PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984) absolutely and unequivocally requires that a plaintiff have a proprietary interest in the thing damaged in order to recover for damages done to that thing, thus eliminating the possibility that a party privy to a contract recover for damages done to the thing for which the contract was confected. As such, I disagree with the following language in the majority opinion: “the plaintiff failed to prove a proprietary interest in the crawfish crop destroyed by the use of ICON. Therefore, the plaintiffs case must fail.” (Emphasis added.)
To me, the PPG Industries, Inc. case actually stands for the opposite premise expressed by the proposed majority opinion. The following language from PPG Industries, Inc. leads me to this conclusion: “[i]t is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss.” PPG Indus., Inc., 447 So.2d at 1061 (emphasis added). First, I find it instructive that our supreme court used “highly unlikely” rather than never. “Highly unlikely” simply does not equal “must fail.” In fact, it is clear to me that “highly unlikely” can 12comfortably coexist with “possible.” Our supreme court, only five years after the PPG Industries, Inc. case was rendered, in 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), stated, that the PPG Industries, Inc. case does not stand for the absolute bar that the majority opinion proposes. In 9 to 5 Fashions, Inc., our supreme court said that the PPG case “abrogated] the rule that flatly prohibited recovery for intangible economic loss produced by negligent conduct.” Id. at 234 (emphasis added).
Second, I also find it relevant that our supreme court used the word “negligently” rather than simply omitting any reference to the level of negligence displayed by the tortfeasor. In the present case, I think that the only conclusion a reasonable juror could reach was that Bayer had reckless disregard for the potential ramifications to this state’s crawfish industry, as a whole, when crawfish farmers used ICON. To me, the trial court based its directed verdict on .this conclusion. This callousness is evidenced by following testimony of Michael Glenn Redlich:
Q: If you were writing the labels, you would have put something on there that would have warned the users of ICON that it would have killed crawfish. Isn’t that correct?
A: Sir, I didn’t — no, because I did not know this when we introduced the product, sir.
Q: you had concerns about it, you have reservations about it, you made multiple inquiries about it, you were disappointed when your employer did not do what you were requesting? Isn’t that true.
A: Yes, sir.
In my view, we should affirm the directed verdict granted by the trial court and affirm the awards given by the jury. Failing this, we should reverse the directed verdict granted by the trial court and remand the case to the jury. There, the jury can look at the particular facts of this case and make a determination of whether “the |3moral, social and economic values involved[,] ... with a view toward the ideal *346 of justice[,]” dictate that “the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages.” PPG Indus., Inc., 447 So.2d at 1061.
Further, under the reasoning of the majority, a tortfeasor may intentionally damage property necessary for a party to fulfill an obligation under a contract, yet only be responsible to that property’s owner for the actual damage done to the property. This is in direct contradiction to our Supreme Court’s findings in 9 to 5 Fashions, Inc., 538 So.2d 228.
Finally, even if one interprets the PPG Industries, Inc. case as the majority opinion does, I believe the PPG Industries, Inc. case is distinguishable from the case before us. In the PPG Industries, Inc. case, the plaintiff had an alternate source of th^ natural gas it needed to operate its manufacturing plant. Here, the buyer/processors had no other source for the crawfish they contracted to receive from the crawfish farmers. The two groups formed a symbiotic relationship whereas, in PPG Industries, Inc., the plant simply found another source for its natural gas. Accordingly, I respectfully dissent.